# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMALL,             :    Civil No. 1:20-CV-1242

                            :

         Plaintiff,        :

                            :

        v.              :

                            :

K. KAUFFMAN, SUPERINTENDENT, :

*et al.*,                      :

                            :

        Defendants.     :    Judge Jennifer P. Wilson

## **MEMORANDUM**

Jerome Small ("Small" or "Plaintiff") is a self-represented individual formerly incarcerated at the Huntingdon State Correctional Institution ("SCI-Huntingdon"), in Huntingdon, Pennsylvania.[1]  Small initiated this action in July 2020 asserting Defendants Superintendent K. Kauffman ("Kauffman") and his assistant Connie Green ("Green") violated his Eighth Amendment rights and retaliated against him for his filing of grievances.  (Docs. 1, 20.)  Presently ripe for disposition are the following motions:  (1) Defendants' motion to dismiss the complaint and supplemental complaint (Doc. 30); (2) Plaintiff's motion to file a second amended complaint (Doc. 41); (3) Defendants' motion to dismiss the second amended complaint (Doc. 47); and (4) Plaintiff's three motions for injunctive relief (Docs. 42, 52, 59).  Upon a review of the filings, the court will

---

[1] Plaintiff is currently housed at SCI-Greene.  *See http://inmatelocator.cor.pa.gov* (search: HF6068; last visited Oct. 14, 2021).

grant Defendants' motion to dismiss Small's Eighth Amendment claims without prejudice and deny the motion to dismiss as to Small's retaliation claim. The court will deny Small's motion to file a second supplemental complaint without prejudice to him filing a separate action concerning his claim against Ms. Hammon, a non-defendant in this action. The court will also deny Plaintiff's motions for injunctive relief as moot based on his transfer to SCI-Greene. Finally, Small will be granted leave to file an amended complaint concerning his Eighth Amendment claim against Defendants.

## FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

### A. Summary of Small's Complaint and Supplemental Complaints

Small alleges that since March 2020, SCI-Huntingdon inmates are being exposed at a high rate to the COVID-19 virus due to the facility's lack of proper ventilation and overcrowding. As of July 2020, "there have been 183 positive cases and 5 deaths, [and] over 54 staff members have tested positive." (Doc. 1, p. 4.)[3] In July 2020, Small claims an entire block was placed under quarantine and the gymnasium was turned into a makeshift hospital. (*Id.*, p. 2.) At times, Small

---

[2] Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Doe v. Univ. of Scis.,* 961 F.3d 203, 208 (3d Cir. 2020).

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

states inmates are locked in their cells 24 hours a day without an opportunity to shower.  (*Id.*)  Small claims Superintendent Kauffman "allows his staff to come to work without the correct [personal protective equipment ("PPE")]."  (Doc. 1, p. 1.)  On June 19, 2020, Small filed a grievance raising these issues.  (*Id.*, p. 4.)  Defendant Green denied the grievance as untimely because it "was not submitted 15 working days after the events upon which claims are based."  (*Id.*)   Plaintiff argues the grievance was improperly denied as "the even[t]s are still on going."  (*Id.*, p. 2.)

Small filed a supplement to his complaint on October 28, 2020 asserting a retaliation claim against Defendants after he was denied receipt of two magazines ordered from outside vendors.  (Doc. 20.)  In September 2020, the Incoming Publications Review Committee ("IPRC")[4] ruled that the magazines did not comply with DC-ADM 803.  (*Id.*, pp. 2–3.)  Small claims the IPRC knowingly and improperly withheld his magazines because they knew he would be forced to grieve the matter before "the two defendants in hopes and search of receiving [his] mail, but the plaintiff kn[ew] that he will not or would not receive due process, as there is a conflict of interest and the plaintiff most likely than not [would] be

---

[4] The IPRC is group of individuals selected by Kauffman to review all incoming publications and determine their compliance with DC-ADM 803, the Pennsylvania Department of Corrections' ("DOC") *Inmate Mail and Incoming Publications Procedures Manual*.

prejudice[d]." (*Id*., p. 2.)  Due to this belief, Plaintiff filed an appeal directly to the Secretary's Office of Inmate Grievance and Appeals ("SOIGA").  The grievance was rejected because it was filed at the wrong level.  Small then filed an appeal to "Kauffman, and Ms. Connie Green[ ] responded" stating he had to file a grievance first.  (*Id.*)  When Small did file a grievance, Green denied it "with an off the wall reason."  (*Id*.)  Kauffman upheld Green's denial with "zero investigation."  (*Id.*)

The court construes Small's complaint and supplement as asserting an Eighth Amendment and retaliation claim against Defendants Kauffman and Green.  (*Id.*, p. 4.)  Aside from monetary damages, Small seeks declaratory and injunctive relief.  Plaintiff asks the court to "mandate PPE requirements for officers to follow" as well as direct prison officials to provide him with a single cell.  (Doc. 1, p. 5.)  He also seeks the return of his confiscated magazines.  (Doc. 20.)

On March 3, 2021, Small filed a motion to file a second supplemental complaint seeking to join Ms. C. Hammon as a defendant.  (Doc. 41.)  In the proposed amendment, Small claims that on February 24, 2021, Ms. Hammon "temporarily removed" him from the law library attendance list.  Ms. Hammon allegedly removed Small from the list "to ensure that all inmates have access to legal time in the library."  (*Id*., p. 4.)  Ms. Hammon further advised Small that there would be "monthly rotations and [that he would] be placed on a waiting list until it is [his] turn again.  Deadlines [would] be given priority 30–45 days before

4

they expire." (*Id.*)  Small claims the removal was "RETALIATORY treatment for filing a section 1983 claim" adding that "Ms. C. Hammon, was hired by Kevin Kauffman."  (*Id.*, p. 2.)  Small avers Ms. Hammon's actions interfered with his "access to the courts" and impeded his ability "to properly object to anything that will be filed by the defendant[s'] counselor."  (*Id.*)  As relief, Small seeks to be placed back on the law library list "for the same time he was once on @ 7:00 pm as plaintiff work[s] from 4:30 am to 5:30 pm."  (*Id.*)  He also seeks monetary damages.

### B. Summary of Facts Related to Small's Preliminary Injunction Motions

On March 5, 2021, Small filed his first of three motions for injunctive relief seeking a single cell after 39 inmates at the facility tested positive for COVID-19 the same day.  (Doc. 42.)  In his first motion, Small suggests that "[t]hese are unsafe conditions to be housed with another inmate" and requests a single cell.[5] (Doc. 42.)  Plaintiff filed his second motion for injunctive relief, Doc. 52, while housed in the SCI-Huntingdon's Restricted Housing Unit ("RHU") under disciplinary custody after getting into a "serious fist fight" with his cellmate.  (*Id.*, p. 3.)  At the time he alleged that SCI-Huntingdon's cells were "unfit for human

---

[5] Small did not file a brief in support of his motion as required by M.D. Pa. Local Rule 7.5.

habitation." (*Id*., p. 4.)  He argued that only "the newest block G, which is the RHU[,] is modern and ha[s] ventilation."  (*Id*., p. 5.)  As relief, Small sought a single cell and a court appointed "independent compliance representative to provide the court with their findings as to the ventilation in the cells and the conditions."  (*Id*., p. 7.)  On June 25, 2021, Small filed a third motion for injunctive relief.  (Doc. 59, 62.)  At the time, Small was still in the RHU, but housed in administrative custody pending his transfer to another facility due to security concerns.  (*Id*.)  Small sought an order staying his transfer pending the outcome of this action.  (*Id*., p. 3.)  Without elaborating, he claims his transfer would "prevent [him] from pursuing [his] constitutional rights."  (*Id*., p. 4.)

### C. Summary of DOC's Response to COVID-19

The DOC has provided publicly available information regarding its efforts to mitigate the risk of the transmission of COVID-19.[6]  *See* https://www.cor.pa.gov/ Pages/COVID-19.aspx.) (last accessed Oct. 14, 2021).

In March 2020, the DOC implemented a statewide quarantine of its population which included a halt to all in-person visitation.[7]  At first, SCI-Retreat, and now SCI-Smithfield, served as the designated reception facility for all new

---

[6] The court may take judicial notice of this information as it is publicly available on a governmental website.  *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017).

[7] In-person visitation resumed at select facilities beginning in May 2021.

male court commitments and parole violators, allowing for their quarantining and medical screening prior to their transfer to a facility.   The DOC also implemented several measures to reduce its population by working with the parole board. Additionally, all individuals entering a facility are screened for flu-like symptoms. No one with a fever over 100 degrees is permitted to enter a facility.  Inmates and staff are required to wear masks and are provided cleaning materials to clean their cells.  (*Id*.)  Correctional Industries continues to produce masks and anti-bacterial soap which is available to inmates.  (*Id*.)  COVID-19 vaccines are available to all inmates and staff.  (*Id*.)  As of August 4, 2021, for the protection of the unvaccinated portion of the SCI-Huntingdon's inmate population, they were moved to a single housing unit.  *See* https://www.cor.pa.gov/Documents/ SCI%20COVID%20Communications/HUN-Fireside-Chat-8-4-21.pdf (last visited Oct. 14, 2021).  Leadership at each facility, including SCI-Huntingdon, continue to frequently update inmates "on the latest in the ever-changing COVID-19 landscape."  *See* https://www.cor.pa.gov/Pages/COVID-19-SCI-Messages.aspx. (last visited Oct. 14, 2021).

As of October 14, 2021, SCI-Huntingdon housed 1,669 inmates.  There are presently no reported inmate cases of COVID-19 at the facility.  Cumulatively, the institution has had 313 inmates test positive for COVID-19.  A total of eight SCI-Huntingdon inmates have died from COVID-19.  SCI-Huntingdon has

administered over 2,500 COVID-19 tests to inmates.  The vaccination status of
SCI-Huntingdon's inmate population is as follows: 1,564 inmates are fully
vaccinated; 9 are partially vaccinated, and 96 are not vaccinated.  *See* DOC
COVID Dashboard, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited
Oct. 14, 2021).

### D. Procedural History

On July 13, 2020, Small initiated this action against Kauffman and Green.
(Doc. 1.)  Defendants filed a motion to dismiss the complaint on October 13, 2020.
(Doc. 16.)  After Small filed a supplemental complaint, Doc. 20, the court
dismissed Defendants' motion to dismiss without prejudice.  Defendants were
granted the opportunity to file a response to the complaint and supplemental
complaint.  (Doc. 22.)  Defendants later filed a motion to dismiss the complaint
and supplemental complaint.  (Doc. 30.)  Plaintiff filed an opposition brief on
January 4, 2021.  (Doc. 33, 34.)  Defendants did not file a reply brief.

On March 8, 2021, without leave of court, Small filed a second supplemental
complaint against Ms. Hammon for temporarily removing him from the law library
list.  (Doc. 41.)  Defendants filed a motion to dismiss limited to addressing claims
raised in Small's second supplemental complaint. (Docs. 47, 48.)  On April 27,
2021, Small opposed the latest motion to dismiss.  (Doc. 50.)  Defendants did not
file a reply brief.  On September 8, 2021, without leave of court, Small filed

objections to Defendants' motion to dismiss, Doc. 66, and a second brief in

opposition to Defendants' motion to dismiss.  (Docs. 67, 68.) [8]

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 action pursuant

to 28 U.S.C. § 1331, which allows a district court to exercise subject matter

jurisdiction in civil cases arising under the Constitution, laws, or treaties of the

United States.  Venue is proper in this district because the alleged acts and

omissions giving rise to the claims occurred at SCI-Huntingdon, located in

Huntingdon County, Pennsylvania, which is in this district.  *See* 28 U.S.C. §

118(b).

## STANDARDS OF REVIEW

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

---

[8] Pursuant to M.D. Pa. Local Rule 7.7, "[n]o further briefs may be filed without leave of court"
after the moving party's reply brief is filed, or the period for filing such a brief has expired.
Accordingly, the court did not consider Small's recent filings when resolving Defendants' or
Plaintiff's pending motions.

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), *as amended* (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**B. Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction maintains the *status quo* pending a final decision on the merits, whereas a "mandatory injunction" alters the status quo by granting injunctive relief before trial, and as such is appropriate only in extraordinary circumstances. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.") Mandatory injunctions should be used sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). A request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995).

**DISCUSSION**

Defendants assert Plaintiff's complaint, supplemental complaint, and proposed second supplemental complaint should be dismissed because: (1) Defendants lack personal involvement in the alleged violations of Plaintiff's rights; (2) Plaintiff has failed to state a plausible Eighth Amendment claim; (3) Small's

11

retaliation claim concerning the denial of two magazines is without merit and raises allegations unrelated to those asserted in the complaint; and (4) Plaintiff's second supplemental complaint involving Ms. Hammon fails to state a valid denial of access to the courts claim and does not involve Defendants.  (Docs. 31, 48.) Defendants seek the denial of two of Plaintiff's three motions for preliminary injunction based on his inability to demonstrate irreparable harm or the likelihood of success on the merits.  (Docs. 45, 53.)  The court will consider each argument below.

### A. Personal Involvement Requirement

Section 1983 provides that persons acting under color of state law may be held liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See* 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007).  There is no *respondeat*

12

*superior* liability under Section 1983.  (*Id.*)  "[A] government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011).  "[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiffs rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  *Evancho* v. *Fisher*, 423 F.3d 347, 354 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1998).

Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct.  *See Rode*, 845 F.2d at 1207–08 (3d Cir. 1988) (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in

review and denial of grievance insufficient to establish personal involvement).

Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish

personal involvement. *Rode,* 845 F.2d 1208.

### 1. Superintendent Kauffman

Small alleges that Superintendent Kauffman manages the "day-to-day

operations" of SCI-Huntingdon.  He claims Superintendent Kauffman knew "there

is no ventilation [at SCI-Huntingdon] and if [COVID-19] made it[s] way into this

prison it would be bad."  (Doc. 1, p. 1.)  Additionally, Small claims Superintendent

Kauffman "allow[ed] his staff to come to work without the correct PPE" and pass

out mail and meals to inmates "without gloves and some with their masks down."

(*Id.,* pp. 1–2.)

Here, Small's complaint fails to set forth a plausible supervisory liability

claim against Superintendent Kauffman.  Small's complaint fails to present any

facts suggesting Superintendent Kauffman was personally aware of any ventilation

deficiencies within the facility, let alone Small's housing unit, that posed a serious

risk to Plaintiff's health and failed to correct them.  Similarly, Plaintiff fails to

allege any facts suggesting Defendant Kauffman personally regularly witnessed

staff members incorrectly wearing their PPE and condoned or acquiesced to this

behavior.  Moreover, there are no factual allegations in the complaint that
Superintendent Kauffman instructed staff to wear their PPE improperly.

As such, Small's allegations of Superintendent Kauffman's alleged
knowledge of the alleged violations and failure to act to prevent them are
conclusory in nature and insufficient to state the requisite causal link between this
Defendant and the claimed constitutional violations.  Plaintiff does not make a
sufficient showing of any personal participation, direction, or knowledge on
Superintendent Kauffman's part regarding any other prison officials' actions.  The
only allegation of direct participation by this Defendant is alleged in the single
grievance Small filed on June 19, 2020, that was rejected by Defendant Green as
untimely.  Accordingly, the court agrees that Small has failed to set forth a
plausible supervisor liability claim against Superintendent Kauffman.

### 2.  Grievance Coordinator Green

Green is the Superintendent's Assistant at SCI-Huntingdon and serves as the
institution's Grievance Coordinator.  (Doc. 1, p. 3.)  Small alleges that Green
denied his June 19, 2020 grievance setting forth his COVID-19 claims as untimely
even though the events complained of were "on going."  (*Id.*, p. 2.)  Defendants
argue Small has failed to allege Green's personal involvement "in causing the
conditions at the facility or in implementing preventative measures there."  (Doc.
31, p. 10.)  The court does not agree.

15

Defendants correctly note that "prisoners do not have a constitutional right to prison grievance procedures." *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 81 (3d Cir. 2014). Consequently, a defendant's "after-the-fact" review of a grievance or report will not establish the responding prison official's personal involvement in the alleged underlying constitutional violation that has concluded. *See Dooley*, 957 F.3d at 374. However, a defendant's personal involvement can also be shown by their actual knowledge and acquiescence in another's alleged constitutional violation. *Rode*, 845 F.2d at 1207.

Viewing the complaint in the light most favorable to Plaintiff, the court concludes that Small presented Green with a grievance intended to correct alleged ongoing violations DOC's PPE policies (masks and gloves). According to Small, Green dismissed his June 19, 2020 grievance as untimely even though "the even[t]s are still ongoing mind you … the jail just had recent cases." (Doc. 1, pp. 2–3.) Thus, the court declines to dismiss Plaintiff's Eighth Amendment claim against Defendant Green based on her alleged lack of personal involvement. *See Wilkins v. Wolf*, No. 1:20-CV-2450, 2021 WL 1578250 (M.D. Pa. April 22, 2021) (denying defendants' motion to dismiss asserting lack of personal involvement based on role in reviewing grievance based on alleged ongoing constitutional violation). Based on the above, Defendants' motion to dismiss Small's Eighth

Amendment claim against Green based on her lack of personal involvement will be denied.

## B. Small Fails to Allege a Plausible Eighth Amendment Claim against Defendants

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. Const. Amend. VIII; *Farmer v. Brennan*, 511 U.S. 825 (1994).  Although the Constitution "does not mandate comfortable prisons … neither does it permit inhumane ones."  *Id.*, 511 U.S. at 833 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  *Rhodes,* 452 U.S. at 347.  Prison officials must, however, provide prisoners with adequate food, shelter, clothing, medical care, and take reasonable measures to guarantee their personal safety.  *Farmer*, 511 U.S. at 832; *Helling v. McKinney*, 509 U.S. 25, 31–32 (1993).

Prison conditions constitute cruel and unusual punishment if they result in serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*,

501 U.S. 294, 298 (1991).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."  *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373–34 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304).

"A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"  *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell* v. *Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).  Such a claim contains two requirements:  an objective and subjective component.  *Farmer*, 511 U.S. at 834.  A prisoner asserting a claim that their conditions of confinement violate the Eighth Amendment must allege (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk."  *Farmer*, 511 U.S. at 834, 844–45.  Notably, deliberate indifference requires more than mere negligence.  *Farmer*, 511 U.S. at 835.  Furthermore, "prison officials

who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

As Defendants do not dispute Small's satisfaction of the objective prong of his Eighth Amendment claim,[9] the sole issue is whether Plaintiff has sufficiently plead facts demonstrating Defendants' deliberate indifference to the risk posed by COVID-19. The court agrees with the Defendants that based on the myriad of steps taken by the DOC and implemented at each facility, Small has failed to plead that the Defendants were aware of the substantial risk COVID-19 posed to Small and failed to take reasonable steps to abate that risk.

Here, even taking the facts in the light most favorable to Small, the court cannot find that Plaintiff has satisfied the subjective component of his Eighth Amendment claim as to either Defendant. The court reaches this finding in part based on Small's failure to allege the personal involvement of Superintendent Kauffman, discussed *supra,* as well as the review of the DOC's detailed mitigation efforts in response to the COVID-19 pandemic designed to reduce the spread of the virus throughout the system and institutions to protect the inmate population as well as staff. These steps include efforts to limit the introduction of the virus from

---

[9] Defendants concede that "the COVID-19 virus constitutes a substantial risk of harm to inmates." *See* Doc. 31, p. 7.

sources outside of its facilities, inside the facility, as well as strategic management of the inmate population to allow for testing of inmates and staff having COVID-19 symptoms or suspected of being exposed to someone who has tested positive for COVID-19.  Medical isolation, COVID-19 testing, and screening is available at each facility, as well as vaccines.  The DOC has also reduced its overall inmate population where appropriate by means of furloughs, compassionate release, and expedited parole releases.  All of these actions are a reasonable response to the danger created by COVID-19 within the prison setting.

The DOC's response to the pandemic, as well as the practices employed by SCI-Huntingdon, demonstrate that Defendants did not ignore or fail to reasonably respond to the substantial risk posed by COVID-19.  Even though 313 inmates at SCI-Huntingdon tested positive for the virus, and 8 inmates died, this does not demonstrate that Defendants Kauffman or Green were deliberately indifferent to the risk that COVID-19 poses.  As noted in *Farmer*, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511 U.S. at 844-45.

In sum, without discounting Small's valid and significant concerns about contracting COIVD-19 while incarcerated at SCI-Huntingdon, the court agrees with the numerous courts throughout the nation that have concluded that similar

allegations do not support a plausible inference that officials have demonstrated deliberate indifferent to inmates' Eighth Amendment rights. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent

21

infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation"). Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at *6.

From Plaintiff's complaint, as pled, the court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" *See Swain*, 961 F.3d at 1289.  The court, therefore, will grant Defendants' motion to dismiss Small's Eighth Amendment claims against both Defendants.

### C. Small's First Supplemental Complaint

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone*, 780 F.3d at 191.  A prisoner asserting a retaliation claim must allege the following elements:  The elements necessary for a prisoner retaliation claim require the prisoner to allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  The filing of a lawsuit or a prison grievance constitutes protected activity

under the First Amendment.  *Fantone*, 780 F.3d at 191.  The court now applies this framework to Small's claims against the Defendants.

On October 28, 2020, Small filed an "amended complaint." (Doc. 20.)  In this pleading, he asserted a new claim of retaliation against the existing Defendants, Kauffman, and Green, for denying his grievance appeal of the IPRC's decision to ban two of his magazines as prohibited pursuant to the DOC's DC-ADM 803.  (*Id.*)  On November 16, 2020, the court issued a memorandum and order defining the pleading as a supplement to the existing complaint.  *See* Docs. 21, 22.  The order also held that although the claim presented in the supplement was not COVID-19 related, which is the central theme of Small's original complaint, it alleged actions taken by both Defendants against Small since his filing of the original complaint.  Federal Rule of Civil Procedure allow a party to assert "as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a); *see also Rainey v. Link*, No. 3:20-CV-0058, 2021 WL 666968, at *3 (M.D. Pa. Feb. 19, 2021) (Plaintiff may assert as many claims as he has "against one or more Defendants, even if those additional claims are unrelated to the common claim linking all Defendants.")  Small's supplemental complaint asserting a retaliation claim against Defendants is, thus, properly joined in this matter and will not be dismissed on this ground.

Next, Defendants seek dismissal of Small's retaliation claim based on a lack of merit.  (*Id.*, p. 12.)  Defendants argue that courts have upheld the DOC's confiscation of incoming publications, for legitimate penological reasons such as safety and security.  (*Id.*)  The court cannot reach the merits of Small's retaliation based solely on the allegations of the supplemental complaint.  This is especially true where the IPRC's rationale for denying Small's magazines is not spelled out in the supplemental complaint.  Accordingly, Defendants' request to dismiss the retaliation claim is premature.  Defendants' motion to dismiss the supplemental complaint will be denied on this ground as well.

### D. Small's Second Supplemental Complaint

Small seeks leave to file a second supplemental complaint, while Defendants seek to dismiss it.  (Docs. 41, 48.)  The parties do not dispute the narrow scope of the proposed supplemental pleading.  In the proposed supplemental complaint, Small "seeks to add another Defendant Hammon, who is accused of **Retaliation**, by stopping him from going to the law library."  (Doc. 50.)  Defendants seek dismissal of the supplemental pleading as it seeks to add a new claim against a new party.  (Doc. 48.)   Small opposes dismissal of the second supplemental complaint because Ms. Hammon's actions "prevented the Plaintiff from filing adequately, the Plaintiff had know[n] access to relevant state and federal statutes, did not have access to state and federal law reporters" etc.  (*Id.*, p. 3.)

24

Rule 15(d) of the Federal Rules of Civil Procedure governs supplemental complaints and provides in part that "[o]n motion and reasonable notice, the court may, on just terms permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event *that happened after the date of the pleading to be supplemented*."  (emphasis added).  However. this rule must be read in conjunction with other relevant rules such as Rule 18 and Rule 20.  Rule 18(a) governs the joinder of claims and provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Rule 20(a)(2) permits joinder of multiple defendants in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[;] and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Here, Small's second supplemental complaint violates both Rule 18 and 20 as it seeks to add new claims and a new party to this action that has no connection to Small's existing allegations against Defendants.  It is undisputed that Ms. Hammon is not presently a party to this action.  Additionally, the proposed supplemental complaint does not allege that Kauffman or Green are alleged to have played any active role in or acquiesced to Ms. Hammon's February 24, 2021 actions of temporarily removing Small from the library call out list to ensure other

inmates' access to the law library.  (Doc. 41.)  To allow Small to bootstrap

unrelated claims of constitutional torts by non-defendants, in which Defendants are

not alleged to have any personal involvement, would be improper.  Accordingly,

Small's motion to file a second supplemental complaint will be denied without

prejudice to Small filing an independent civil action concerning Ms. Hammon's

actions.  As such, Defendants' motion to dismiss the second supplemental

complaint will be denied as moot.

### E.  Small's Motions for Preliminary Injunctive Relief

Small's transfer from SCI-Huntingdon to SCI-Greene renders all three of his

motions for injunctive relief moot.  Once a prisoner who is complaining of his

conditions of confinement is transferred from the prison about which he is

complaining, the court cannot grant him meaningful prospective relief because he

would not benefit from that relief.  Thus, with limited exceptions not at issue here,

Small's claims for injunctive relief are moot.  *See Sutton v. Rasheed*, 323 F.3d 236,

248 (3d Cir. 2003) (stating that "[a]n inmate's transfer from the facility complained

of generally moots the equitable and declaratory claims").  As Small is no longer

housed at SCI-Huntingdon, his motions for preliminary injunction for relief from

his conditions of confinement at that facility are denied as moot.

**F. Leave to Amend**

As noted above, Small's Eighth Amendment claim is subject to dismissal due to his failure to adequately plead Defendants' deliberate indifference to the substantial risk COVID-19 posed to his health while housed at SCI-Huntingdon. However, because the court cannot determine that it would be futile or prejudicial to permit Plaintiff to file an amended complaint against Defendants that corrects the identified deficiencies of this claim, the court will grant Plaintiff twenty-one days (21) to file an amended complaint as to his Eighth Amendment conditions of confinement claim.

If Small decides to file an amended complaint, he must clearly label it as such on the face of the document.  It must bear the docket number assigned to this case and must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, on the court-approved form.   In addition, any amended pleading filed by Small replaces all prior pleadings filed with the court.  Therefore, Small must plead all claims against Defendants, including those that were not dismissed by the court, i.e. his retaliation claim, in his second amended complaint.  Plaintiff may not include his claims against Ms. Hammon in his second amended complaint.  He may, however, file a separate action concerning his alleged access to the courts claim against her if he so choses.

The court cautions Small that his second amended complaint must be concise and direct.  *See* Fed. R. Civ. P. 8(d).  Each allegation must be set forth in individually numbered paragraphs in short, concise, and simple statements.  *Id.*; Fed. R. Civ. P. 10(b).  The factual allegations of the second amended complaint may not be conclusory.  Instead, the facts alleged should be specific enough as to time and place of the violations and must identify the specific person or persons responsible for the deprivation of his constitutional rights and what each defendant did to harm him.  *Iqbal*, 556 U.S. at 676.

If Small fails to file a second amended complaint on the court's form within twenty-one (21) days, this action will proceed solely on Small's retaliation claim set forth in his amended complaint.

## CONCLUSION

Defendants' motions to dismiss, Docs. 30 and 47, will be granted in part and denied in part.  Small's claims against Kauffman will be dismissed for lack of personal involvement.  Small's Eighth Amendment conditions of confinement claim will be dismissed without prejudice.  Defendants' motion to dismiss Small's retaliation claim set forth in his supplemental complaint will not be granted.  Plaintiff's motion to file a second supplemental complaint, Doc. 41, asserting claims against Ms. Hammon will be denied.  Accordingly, Defendants' motion to dismiss the proposed second supplemental complaint will be denied as moot.

Plaintiff's motions for injunctive relief, Docs. 42, 52, and 59, will be denied as moot.  An appropriate order will follow.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  December 3, 2021