IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME SMALL, | : Civil No. 1:20-CV-01242 |
| Plaintiff, | : |
| v. | : |
| K. KAUFFMAN, SUPERINTENDENT, *et al.*, | : |
| Defendants. | : Judge Jennifer P. Wilson |

## **MEMORANDUM**

Jerome Small ("Plaintiff") is a self-represented individual formerly incarcerated at the Huntingdon State Correctional Institution ("SCI-Huntingdon"), in Huntingdon, Pennsylvania.[1] Plaintiff initiated this action in July 2020 asserting that Defendants Superintendent K. Kauffman ("Kauffman") and his assistant Connie Green ("Green") violated his Eighth Amendment rights and retaliated against him for his filing of grievances. (Docs. 1, 20, 77.) Presently ripe for disposition is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 78.) For the following reasons, the court will grant in part and deny in part Defendants' motion to dismiss. The court will dismiss Plaintiff's Eighth Amendment claims with prejudice. The court will dismiss the retaliation relocation claim against Defendant Kauffman without prejudice. The court will

---

[1] Plaintiff is currently housed at SCI-Greene. *See* http://inmatelocator.cor.pa.gov (search: HF6068; last visited July 21, 2022).

1

not dismiss the retaliation claim against Defendant Kauffman based on the relocation to a facility further away from Plaintiff's family. The court will dismiss with prejudice the retaliation claims against Defendant Kauffman regarding Plaintiff's housing at SCI-Greene. The court will dismiss without prejudice the retaliation claims against both defendants based on the withholding of magazine, legal papers, and property.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated his action by filing an initial complaint in July of 2020. (Doc. 1.) He filed an amended complaint in November of 2020, which this court deemed to be a supplemental complaint. (Docs. 20, 69, p. 8.)[2] Defendants filed a motion for summary judgment. (Doc. 30.) On December 3, 2021, this court entered an order allowing Plaintiff's retaliation claims included in the supplemental complaint to proceed, dismissing Plaintiff's Eighth Amendment claims, and allowing Plaintiff to file an amended complaint. (Doc. 70.) The memorandum accompanying the order included instructions on how to file an amended complaint, including "any amended pleading filed by Small replaces all prior pleadings filed with the court. Therefore, Small must plead all claims against Defendants, including those that were not dismissed by the court, i.e. his retaliation claim, in his second amended complaint." (Doc. 69, p. 27.)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Plaintiff then filed an amended complaint on February 11, 2022, which is the operative complaint in this case. (Doc. 77.) In the amended complaint, he realleges both the Eighth Amendment claims based on COVID-19 procedure, realleges his retaliation claims, and raises new retaliation claims. (*Id*.) He alleges that On March 17, 2020, the inmates housed at SCI-Huntingdon were locked down due to the COVID-19 pandemic. (*Id*., ¶ 3.) On June 19, 2020, Plaintiff filed a grievance to Defendant Connie Green reporting that staff were walking around without masks or wearing improper masks, including scarves, bandanas, and fleeces, that the staff on A/block tested positive for COVID-19, and that Plaintiff developed COVID-19 symptoms after four inmates tested positive. (*Id*., ¶ 4.) He further alleges that Plaintiff was never tested for COVID-19. (*Id*.) Plaintiff reports that Defendant Green dismissed this grievance as untimely, while the violations were still ongoing. (*Id*., ¶ 5.) He alleged that Defendant Kauffman, the superintendent of the facility, was in the presence of staff who were either wearing an improver mask or improperly wearing masks. (*Id*., ¶ 6.) Plaintiff alleges that on August 7, 2020, Defendant Kauffman witnessed a work supervisor for inmates, Mrs. Miller, not wearing a mask in the main hallway and did not take action. (*Id*., ¶ 7.) Ms. Miller came through A/block without a mask on August 28, 2020, and on September 2, 2020. (*Id*.) On June 23, 2021, Defendant Kauffman witnessed

3

Officer Kyper with a "pantyhose style mask" and did not take action. (*Id.*)  Officer Kyper continued to wear this mask until Plaintiff was transferred. (*Id.*)

Plaintiff further alleges that Defendant Kauffman allowed bigger cohort sizes than the Department of Corrections' policy allowed. (*Id.*, ¶ 8.)  In December of 2020, the Department of Corrections published a memo that cohort sizes were to remain at 8 to16 people, and on February 5, 2021 and on March 10, 2021, the whole bottom tier of the A/block was sent to A year at one time. (*Id.*)  A year is approximately 35 years by 10 yards, and one tier contains 95 plus inmates. (*Id.*)  On March 10, 2021, the high side was quarantined after someone got sick after mixing the high side and low side and they did not test all the inmates.

Plaintiff alleges that Defendant Kauffman failed to put in place an appropriate screening and control procedure, and that this failure helped to create a dangerous environment becoming cruel and unusual punishment in violation of the Eighth Amendment. (*Id.*, ¶ 9.)  The screening and control procedures consisted of a head temperature check and having a face covering to enter the facility. (*Id.*)  Finally, Plaintiff alleges that Defendants Kauffman was aware of poor ventilation at SCI-Huntingdon. (*Id.*, ¶ 10.)

In summation of the Eighth Amendment claims, Plaintiff alleges that both Kauffman and Green failed to ensure that all staff members at SCI-Huntingdon were abiding by the DOC's protocols and policies for mask wearing by staff,

cohort sizes, and having the appropriate screening and control procedures in place. (*Id.*, ¶ 11.)

Plaintiff also alleges retaliation. First, he brought new claims of retaliation regarding his transfer to SCI-Greene rather than facilities closer to his family and being held in "SDU" instead of the general population. (*Id.*, ¶ 12.) Plaintiff also re-alleged the retaliation claims originally included in the supplement to his complaint regarding withholding of magazines. (*Id.*, ¶ 15.) He also brought new claims of retaliation regarding alleged withholding of his legal paperwork. (*Id.*, ¶ 16.)

Defendants have filed a motion for summary judgment under Fed. R. Civ. P. 12(b)(6). (Doc. 78.) The parties have briefed the issues and the motion is ripe for review.

## JURISDICTION

The court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Huntingdon, located in Huntingdon County, Pennsylvania, which is in this district. See 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Plaintiff's Eighth Amendment Claims

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. Const. Amend. VIII; *Farmer v. Brennan*, 511 U.S. 825 (1994). Although the Constitution "does not mandate comfortable prisons ... neither does it permit inhumane ones." *Farmer,* 511 U.S. at 833 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes*, 452 U.S. at 347. Prison officials must, however, provide prisoners with adequate food, shelter, clothing, and medical care, and take reasonable measures to guarantee their personal safety. *Farmer*, 511 U.S. at 832; *Helling v. McKinney*, 509 U.S. 25, 31–32 (1993).

Prison conditions constitute cruel and unusual punishment if they result in serious deprivation of the prisoner's basic human needs. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Only conditions that are so

reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."  *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373–34 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304).

"A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"  *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).  Such a claim contains two requirements: an objective and subjective component.  *Farmer*, 511 U.S. at 834.  A prisoner asserting a claim that their conditions of confinement violate the Eighth Amendment must allege (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official personally knew of the substantial risk to the

8

inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45.  Notably, deliberate indifference requires more than mere negligence.  *Farmer*, 511 U.S. at 835.  Furthermore, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants do not dispute the objective component of the *Farmer* standard, and agree that COVID-19 virus constitutes a substantial risk of harm to inmates. (Doc. 79, p. 8.)  Therefore, the only issue is whether the prison officials named as defendants personally knew of the substantial risk to the inmate's health and failed to respond reasonably to the risk.  In order to allege this element, Plaintiff has pleaded facts intended to show that Defendants Kauffman and Green had actual knowledge of the substantial risk: that Defendant Green was aware of the staff not using masks based on Plaintiff's grievance, Doc. 77, ¶ 4; that Defendant Kauffman witnessed an unmasked Ms. Miller and an inadequately masked Officer Kyper, *Id*, ¶ 7; that Defendant Kauffman allowed bigger cohort seizes on three occasions, *Id*., ¶ 8; that Defendant Kauffman failed to put in appropriate screening and control procedures, *Id*., ¶ 9; and that Defendant Kauffman was aware of poor ventilation in the facility, *Id*., ¶ 10.

The Third Circuit has held that while a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). The test for a sufficiently culpable state of mind on the part of the prison officials is focused not on isolated failures but on the defendants' entire course of conduct. *Swain v. Junior*, 961 F.3d 1276, 1287–88 (11th Cir. 2020). Here, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions. The court may take judicial notice of this information, as it is publicly available on a governmental website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017). "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff." *Bevins v. Kauffman*, No. 1:20-cv-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).

While the court understands Plaintiff's concerns regarding the impact of the COVID-19 pandemic in an institutional setting, it finds that Plaintiff's complaint

has failed to state a claim for which relief can be granted pursuant to the Eighth Amendment.

### B. Plaintiff's Retaliation Claims

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone*, 780 F.3d at 191. A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191. The court now applies this framework to Plaintiff's claims against the Defendants.

#### 1. Transfer to SCI-Greene

Plaintiff alleges that his transfer from SCI-Huntingdon to SCI-Green instead of a closer facility was retaliation for filing his Eighth Amendment claims, and that Defendant Kauffman signed off on the transfer. (Doc. 77, ¶ 12–13.) Therefore, these claims are only alleged against Defendant Kauffman.

First, as noted above, it is well settled that the filing of a lawsuit or of a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.  However, Plaintiff does not allege this was the reason for his transfer.  Instead, Plaintiff alleges that the transfer, which took place in June of 2021, followed a fight with his "celly" in May of 2021 and was deemed to be a "separation transfer."  (Doc. 77, ¶ 12.)  Therefore, Plaintiff fails to allege facts to support a finding that the transfer itself was in retaliation for filing the instant suit.  Absent alleged facts that support such a finding, Plaintiff's retaliation claim is dismissed without prejudice.

Second, Plaintiff also alleges that the transfer to a facility as far away from his family as SCI-Green rather than the facilities closer to his family in which he did not have any separation requirements was in retaliation for filing of the instant action.  (Doc. 77, ¶ 13.)  The court acknowledges that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," and inmates generally have no due process liberty interest in how they are classified or where they are incarcerated. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005); *see Meachum v. Fano,* 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); *Ali v. Gibson,* 631 F.2d

12

1126, 1134–35 (3d Cir.1980) (a prisoner has no liberty interest in remaining at a particular prison and the Constitution does not require a hearing prior to a transfer). However, a transfer in retaliation for the exercise of a constitutional right is an actionable constitutional violation. *Underwood v. Mendez*, No. 3:04-CV-1624, 2005 WL 2300631, *5 (M.D. Pa. Sep. 9, 2005). Therefore, Plaintiff's retaliation claim that he was transferred further away from family because he filed the instant action is an actionable claim that will be allowed to proceed against Defendant Kauffman.

Third, Plaintiff claims that once relocated to SCI-Greene the retaliation continued by not being placed in the general population. (Doc. 77, ¶ 12–13.) In order to state a claim under § 1983, a plaintiff must sufficiently allege that the defendants had personal involvement in the act or acts that the plaintiff claims violated his constitutional rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This claim lacks the personal involvement of Defendant Kauffman, as determinations regarding housing were up to supervisors at SCI-Greene, and not supervisors at SCI-Huntingdon. Therefore, this retaliation claim is dismissed with prejudice.

### 2. Magazines

Next, Plaintiff alleges a retaliation claim based on Defendants withholding his magazines. (Doc. 77, ¶ 15.) Plaintiff's complaint fails to establish the third

13

element for a retaliation claim under *Fantone*. He does not allege that the filing of the instant lawsuit, was the cause of the retaliation. *Fantone*, 780 F.3d at 191. This element was previously alleged in the supplemental complaint, Doc. 20, p. 1, but Plaintiff was directed to reallege these allegations in his amended complaint, Doc. 69, p 27. Looking at only the amended complaint, this claim fails to state a claim for which relief can be granted and is dismissed without prejudice.

### 3. Legal Work and Property

Plaintiff also raises a retaliation claim that his legal work and property had not been delivered to him at SCI-Greene following the transfer. (Doc. 77, ¶ 16.) Again, Plaintiff has failed to allege that this delay was in retaliation for filing the instant action. *See Fantone*, 780 F.3d at 191. Therefore, this claim is dismissed without prejudice.

## Conclusion

Defendants' motion to dismiss, Doc. 78, will be granted in part and denied in part. Plaintiff's Eighth Amendment claims against Kauffman and Green will be dismissed with prejudice. Plaintiff has had the opportunity to amend these claims and has failed to state a claim for which relief can be granted. Plaintiff's retaliation claim against Defendant Kauffman premised on the transfer to SCI-Greene will be dismissed without prejudice. Plaintiff's retaliation claim against Defendant Kauffman based on being relocated further from his family will not be

dismissed. The retaliation claims against both Defendants premised on the withholding of magazines and the withholding of legal work and property will be dismissed without prejudice. Plaintiff's retaliation claim premised on his housing following placement in SCI-Green will be dismissed with prejudice.

Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his second amended complaint and use the docket number assigned to this case. Further he is cautioned that any amended pleading filed with the court replaces all prior pleadings filed with the court. Therefore, Plaintiff must plead all remaining claims against Defendants, including only those that were not dismissed by the court, i.e. his retaliation claim locating him further from family.

An appropriate order will follow.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: August 1, 2022